## COMMERCIAL CASUALTY INS. CO. v CREAGER

Ohio Appeals, 2nd Dist., Montgomery Co.

No. 1713. Decided May 20, 1942.

Marshall, Harlan & Marshall, Dayton, for plaintiff-appellant.

Swaney & Creager, Dayton, for defendant-appellee.

## OPINION

By BARNES, J.

The above entitled cause is now being determined as an error proceeding by reason of plaintiff's appeal on questions of law from the judgment of the Court of Common Pleas of Montgomery County, Ohio.

Plaintiff's action was one for the recovery of money claimed to be owing to plaintiff from defendant under the following circumstances:

Plaintiff, Commercial Casualty Company, doing business as a corporate surety and in the course of business, executed a bond for defendant, a contractor, securing the faithful performance by defendant of a certain sub-contract for grading and berm work on a section of U. S. Route 42 between Lebanon and Mason, Ohio. The principal contractor was the Bigler Paving Company, and the bond was executed for the benefit of this principal.

Plaintiff claims that defendant did not fully perform his sub-contract, by reason of which plaintiff paid sub-contractor's obligations in the amount of $1485.59; also paid attorney fees in the amount of $2500.00; and incurred and paid expenses in the amount of $393.33.

Prior to the time the action was filed plaintiff received from defendant, in partial reimbursement, the sum of $1357.04. This amount was paid and intended as a credit on the $1485.59, which defendant admitted was due and payable, and thereby left a conceded balance of $128.55.

Defendant denied liability for the claimed attorney fees in the amount of $2500.00 and the item of expense in the sum of $393.33.

The case was tried before a judge of the Common Pleas Court of Montgomery County and a jury, and resulted in a verdict for the plaintiff in the sum of $128.55 and interest.

Plaintiff duly filed its motion for a new trial, which was overruled and judgment entered on the verdict.

Within proper time counsel for plaintiff filed notice of appeal on questions of law and thus lodged the case in our court.

The sole issue in the case is whether or not the record demands and requires a judgment for the plaintiff as a matter of law; a reversal and remand for new trial because the verdict and judgment were contrary to the weight of the evidence; or an affirmance.

The following brief summary of facts will render understandable the nature of the controversy:

On or about September 7, 1932, defendant Creager entered into a sub-contract with Bigler Paving Company, general contractor, for the grading and berm work on a section of highway between Lebanon and Mason, Ohio. The contract was on a yardage basis, that is defendant was to be paid 19c per cubic yard for each yard of dirt placed in fills or removed from

cuts on the highway. The approximate total amount of the contract was $26,000.00. On October 14, 1932, the defendant signed a written application form directed to plaintiff, seeking the execution by plaintiff as surety of a bond in the sum of $13,000.00, securing the faithful performance by defendant of his contract with Bigler Paving Company. This application was presented in evidence and marked Plaintiff's Exhibit C. Clause 4 of such application reads as follows:

"That the undersigned will at all times indemnify and keep indemnified, the Company, and hold and save it harmless from and against any and all liability, damages, loss, costs, charges and expenses of whatever kind or nature, including counsel and attorney's fees, which the Company shall or may, at any time, sustain or incur by reason or in consequence of having executed the bond herein applied for, or by reason or in consequence of the execution by the Company of any and all other bonds executed, for us at our instance and request, and that we will pay over, reimburse and make good to the Company, its successors and assigns all sums and amounts of money which the Company or its representatives shall pay, or cause to be paid, or become liable to pay, on account of the execution of any such instrument, and on account of any liability, damage, costs, charges and expenses of whatsoever kind or nature, as well, also in connection with any litigation, investigation, collecting any premium due or losses sustained or other matters connected therewith, including counsel and attorney's fees, such payment to be made to the Company as soon as it shall have become liable therefor, whether the Company shall have paid said sum or any part thereof or not. That in any accounting which may be had between the undersigned and the Company, the Company shall be entitled to credit for any and all disbursements in and about the matters herein contemplated; made by it in good faith under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether such liability, necessity, or expediency existed or not."

At the same time defendant executed a sworn financial statement, Plaintiff's Exhibit B, purporting to set out his financial condition as of October 1, 1932. In reliance on the financial statement, the application and indemnity agreement, plaintiff executed a bond as surety in the sum of $13,000.00 to the Bigler Paving Company as obligee, securing the financial performance of his contract by defendant.

When the application, financial statement, contract and bond reached the home office of the plaintiff and were examined by Mr. Potter, engineer employed by plaintiff, he immediately considered the price at which the job was taken to be too low, and ordered an investigation, which was undertaken by Mr. Greisemer, a special agent of the company. The report of Mr. Greisemer showed the financial statement to contain serious discrepancies, and it was therefore deemed necessary for its protection that plaintiff take joint control from the defendant of the funds to be earned on the job.

Plaintiff's attorneys in Dayton, Marshall, Harlan and Marshall, were thereafter directed to secure joint control and supervise the paying out of future funds earned on the job, in order to protect the company's interest. Upon request of Thomas E. Marshall, of the firm of Marshall, Harlan and Marshall

defendant executed to Marshall some form of joint control agreement, under the terms of which estimates thereafter paid by the general contractor were to be paid to defendant and Marshall jointly. This joint control agreement apparently was executed in writing, but was not introduced in evidence, either as an exhibit or by reading it into the record. We only know its terms by general reference by witnesses for both plaintiff and defendant. It is admitted in evidence that a joint control agreement was entered into, under the terms of which estimates thereafter paid by the general contractor were paid to defendant and Marshall jointly, and disbursements were thereafter made by check requiring the joint signatures of the defendant and Marshall.

After operating thus for about one month, the mechanics were changed, whereby the defendant endorsed his estimate checks and the amount thereof was then deposited in the name of Marshall, Harlan and Marshall, and disbursements made by the check of Marshall, Harlan and Marshall, on the O. K. of defendant Creager.

We have no difficulty in determining that the plaintiff Insurance Company was warranted in its conclusion that the financial statement of the defendant contained discrepancies. On the same day that defendant furnished to the Insurance Company the financial statement referred to, he also furnished to the Winters National Bank, of Dayton, Ohio, a financial statement in support of an application for loan. These two statements made on the same day were in marked conflict. The verified statement made to the Insurance Company showed a net worth of $15,000.00 more than was indicated on the statement made to the bank.

The contract price may or may not have been too low, considering the elements usually taken into consideration by contractors in making their bids. There was a loss of approximately $1500.00, and this alone supports the conclusion that the contract price was too low. However, the defendant presented evidence of extraordinary and unforeseen conditions, which it is argued no contractor would think of considering in fixing a bid price. Some of these conditions were an excessive rainfall, which washed out part of his fill and required its replacement; he also was hit by the bank holiday; ran into a type of clay which could not be used in the fill; also other things which it is unnecessary to enumerate.

Considering the size of the contract, the loss was not heavy, being only $1485.59. Of course, in addition to this was the loss to defendant of contemplated profits. The question of profit was purely personal to the defendant and not of concern to the Insurance Company.

The record presents very little dispute on questions of fact. However, one factual dispute is momentous, and in our judgment determinative of the appeal. We have heretofore copied in full Clause 4 of the application for surety bond, which plaintiff argues contains the indemnity agreement which authorizes it to make a charge against defendant for attorney fees and expenses paid out by it under the joint control agreement.

The plaintiff Insurance Company, through its representative and Mr. Thomas E. Marshall, presents evidence that the basis of the charge was time consumed. Mr. Thomas E. Marshall says that he kept track of his time and made each charge on the basis of $10.00

per hour, in all 250 hours, or $2500.00. In addition to this were expenses, principally in travelling in his automobile. A small amount of the expense item was expense incurred in making trips from his home to the job.

Clause 4, heretofore referred to as indemnity clause of the application, can not be said to be self-operative to the extent of an authorization of joint control as was subsequently demanded and agreed to. This Clause 4 was self-operative in many particulars, but before joint control could be obtained it was necessary to have an agreement with the defendant. This agreement might be controlled wholly by its own terms, or in some particulars might be referable to the provisions of Clause 4. This is where the dispute arises. According to the defendant's testimony, he states that when he was approached upon the question of joint control, he was willing so to do if there was no additional expense, and thereupon Mr. Marshall told him that there would be no additional expense because he, Marshall, was hired by the Bonding Company by the year. Mr. Marshall very emphatically denies this statement of the defendant, and goes farther and states that on various occasions he explained to the defendant that his services were increasing the cost to the defendant because the Insurance Company would charge back to him what they had to pay as attorney fees.

It is argued by counsel for the plaintiff that testimony as above should not have been admitted, since in effect it was an attempt to vary the terms of the written contract set out in paragraph 4. Stating the proposition a little differently, the theory is advanced by counsel for plaintiff that Mr. Marshall, who was acting as attorney for the company, would have no authority to modify the contract between the parties.

We recognize the legal principles, but do they apply in the instant case?

When the plaintiff company determined its policy and determined that they desired joint control as a further protection on its bond, it could not step in and take joint control but it was necessary to secure an agreement from the defendant so to do. There were other things that the plaintiff company might have done without seeking an agreement, and which might have been more damaging to the defendant than a joint control agreement. Regardless of what might have been done, we can only deal with what was done. Counsel for plaintiff, under direction of the Insurance Company, sought and obtained a joint control agreement. Defendant could agree to such a suggestion or he might decline so to do. He says he agreed conditionally, and that the condition was consented to. We have no difficulty in determining that such a condition, if made, would be binding. It might be classified as an inducement to enter into the contract. This at once ██ disposes of the claimed ground of error that the trial court should have directed a verdict for the plaintiff.

However, there remains the question of the weight of the evidence. On this particular question there is no testimony except that of the defendant and opposite, that of Mr. Thomas E. Marshall. If we were trying the case de novo, we would have great difficulty in determining any factual question contrary to either the testimony or professional statement of Mr. Marshall. We base this wholly on our personal appraisal of him and

his standing and reputation as a member of the Montgomery County Bar.

However, we are not determining the matter de novo, and must concede to the jury its unquestioned right to determine disputed questions of fact. It is only when the jury's determination is such that the verdict is so manifestly against the weight of the evidence as to shock the conscience of the court, that a reviewing court can reverse on the weight of the evidence.

Under this situation we are constrained to the view that the judgment of the trial court must be affirmed. Costs in this proceeding will be adjudged against the appellant.

GEIGER, PJ. & HORNBECK, J., concur.